STATE OF NORTH CAROLINA v. WAYNE SEAY

No. 7921SC647

(Filed 18 December 1979)

1. **Constitutional Law § 50— five years between offenses and indictments—no denial of speedy trial**

    Defendant in an embezzlement prosecution was not denied his right to a speedy trial by the lapse of five years from the time of the alleged offenses to the time indictments were handed down where the evidence tended to show that the length of the delay because of defendant's own assurances that he would repay was not a period of five years but really little more than a year; defendant's own promise of repayment along with a heavy SBI caseload and the complicated nature of this case caused the delay; defendant's own assurances constituted a waiver of most of the time span when an indictment could have been brought; and no prejudice from the delay was shown by defendant.

2. **Embezzlement § 1— elements of offense**

    Embezzlement in violation of G.S. 14-90 is made up of four elements: (1) defendant must be the agent of the prosecutor; (2) by terms of his employment, office or other fiduciary relationship he was free to receive the property of his principal; (3) he received the property in the course of his employment, office or other fiduciary relationship; and (4) knowing it was not his own, he converted it to his own use or fraudulently misapplied it.

3. **Embezzlement § 6— defendant as fiduciary**

    Defendant in an embezzlement case was in a fiduciary relationship where he was a promoter of a limited partnership in which the prosecutors invested; behind a corporate front, he was in charge of investing the money in real property; he received and deposited their money in the account of a corporation of which he was secretary-treasurer and which he had designated to be general partner for the limited partnership; and the money was not invested as promised and was not returned to those who invested it.

4. **Embezzlement § 6.1— fiduciary—definition in instructions proper**

    The trial court in a prosecution for embezzlement in violation of G.S. 14-90 properly defined a fiduciary as "a person having a duty created by his undertaking to act primarily for another's benefit."

APPEAL by defendant from *Rousseau, Judge.* Judgments entered 19 April 1979 in Superior Court, FORSYTH County. Heard in the Court of Appeals 4 December 1979.

Defendant was charged in two bills of indictment with embezzlement of funds from Inez Poindexter and James Belton. In April, 1973, James Belton, Inez Poindexter and at least one other were solicited by Roger Tise to make investments in Salem Properties, a limited partnership, which would be formed once sufficient capital was raised and which would make investments in real property. The general partner for this limited partnership was to be American Marketing Corporation. Robert McLawhorn was president and defendant was secretary-treasurer of the general partnership corporation. Tise was hired and trained by McLawhorn to solicit capital for the limited partnership. The evidence is in dispute on whether his compensation was to be a salary with a 10% commission for sales or a straight 10% commission. He did receive one check for $500.00 which was designated a "commission advance" and which was drawn on Intercapital Corporation of which defendant was president and McLawhorn was secretary-treasurer.

Poindexter and Belton were provided with subscription letters, power of attorney forms and copies of a partnership agreement for Salem Properties which designated American Marketing Corporation as general partner. Partnership subscriptions were in $100.00 units, and the agreement of partnership was not to become effective or to be recorded with the register of deeds until a minimum of $50,000.00 in capital was raised. The agreement also provided that "[t]he general partner agrees that it will, in the name of the partnership, jointly open and thereafter maintain in a North Carolina bank a bank account or accounts in which shall be deposited all contributions of the partners and all other partnership income and that it will use such funds solely for the business of the partnership." Poindexter contributed $500.00 on 6 April 1973 and Belton contributed $400.00 on 2 April 1973 to the Salem Properties investment explained to them by Tise. Both delivered checks to Tise made payable at his instructions to "American Marketing Corporation, General Partner." Both checks were delivered by Tise to defendant. The checks were cashed and endorsed "For Deposit only, American Marketing Corporation by Wayne Seay." Tise was fired shortly after these solicitations were made.

In the latter part of 1973, Poindexter began inquiring of defendant about her investment. She was given his phone number by Tise who was her son. She called him every month or so about returning the money and was given assurance that he was working on everything and would "get things a-goin'." In March or April, 1975, Tise talked with Seay about the investments and was assured that they were safe but not reachable. In February, 1976, Poindexter consulted an attorney and made a written complaint to the Attorney General in Raleigh. In September, 1976, she saw the district attorney for the twenty-first judicial district. The district attorney wrote defendant a letter and defendant responded by phone in November, 1976. Defendant acknowledged receipt of the money and gave excuses of ill health and promised to repay in thirty days. Belton and Poindexter hired an attorney who also reached defendant. He told their attorney he was financially unable to repay at that time but promised to contact the attorney again within a week about the matter. He never did. The SBI began an investigation in 1977. A limited partnership known as Salem Properties with the general partner being American Marketing Corporation was never registered nor formally created. Poindexter and Belton were never reimbursed nor repaid for their contribution. Indictments were brought against defendant on 27 February 1978 for embezzlement from Poindexter and Belton.

Defendant presented evidence through the testimony of Robert McLawhorn that he and defendant concluded after firing Tise that the investment solicitations made by Tise which totaled $1,000.00 should be returned. They accordingly sent Tise a letter instructing him to use the commission advance to repay Poindexter, his mother. The letter contained $500.00 in cash with which he was to reimburse Belton and another subscriber for their contributions to the Salem Properties venture.

The jury returned verdicts of guilty and judgments were entered thereon. Defendant appeals.

*Attorney General Edmisten, by Special Deputy Attorney General David S. Crump, for the State.*

*Morrow, Fraser and Reavis, by John F. Morrow, for defendant appellant.*

VAUGHN, Judge.

[1]  Defendant first assigns error in the denial of his pretrial motion to dismiss for denial of his right to a speedy trial embodied in the Sixth Amendment of the United States Constitution applicable to the states through the Fourteenth Amendment and the Eighteenth Section of the First Article of the North Carolina Constitution. Almost five years had passed from the alleged embezzlements in April, 1973 until the 27 February 1978 indictments.

Such a long period of time, nothing else appearing, constitutes unusual and undue delay.

> "[W]hen there has been an atypical delay in issuing a warrant or in securing an indictment and the *defendant shows* (1) that the prosecution deliberately and unnecessarily caused the delay for convenience or supposed advantage of the State; and (2) that the length of delay created a reasonable possibility of prejudice, defendant has been denied his right to a speedy trial and the prosecution must be dismissed."

> *State v. Johnson,* 275 N.C. 264, 277, 167 S.E. 2d 274, 283 (1969) (emphasis added).

The circumstances of each case are controlling but factors to be considered by a court in determining whether an accused has been deprived of a speedy trial are (1) the length of the delay, (2) the cause of the delay, (3) waiver by the defendant and (4) prejudice to the defendant. *State v. McKoy,* 294 N.C. 134, 240 S.E. 2d 383 (1978). *State v. Johnson, supra.* In this case, defendant has not shown a deliberate and unnecessary delay caused by the State resulting in a reasonable possibility of prejudice to defendant.

The only possible prejudice shown by defendant at the hearing on the motion was that all records for the varied companies and partnerships he was involved in were lost when the building owner repossessed the business office for all the companies sometime in July or August of 1973. This loss of evidence was not caused or in any way contributed to by the handing down of an indictment in early 1978.

For the first three years of this time span, defendant gave assurance to his alleged victims that the money was safely invested. Not until February of 1976 was any official of the State of North Carolina informed of or complained to in regard to the Poindexter and Belton investments. In September, 1976, the local district attorney received the information and contact was made with defendant. In early November, 1976, he promised the district attorney he would repay the money and was given thirty days to do so. Thus, until early December, 1976, any delay in bringing defendant to trial lies squarely on his shoulders.

In April of 1977, ancillary to an investigation of another set of corporations and partnerships in which defendant was involved, information the local district attorney had on the Poindexter and Belton investments was turned over to the White Collar Crime Unit of the SBI. Because of a heavy caseload, this unit did not begin investigating these particular embezzlements by defendant until October, 1977. Bank records involving the Poindexter and Belton payments were not received until January of 1978. Indictments were brought the next month. The only possible prejudicial delay on these facts was from December, 1976, a time by which defendant was to repay the investors, until February, 1978, a period of little more than a year which was not a period constituting prejudicial delay in defendant's case. It was a reasonable period for investigation particularly in light of the many and varied business and legal entities surrounding defendant.

Thus, looking at the four factors we are to consider according to *State v. McKoy, supra,* and *State v. Johnson, supra,* the facts and circumstances of this case present the following: (1) the length of the delay because of defendant's own assurances that he would repay was not a period of five years but really little more than a year; (2) defendant's own promises of repayment along with a heavy SBI caseload and the complicated nature of this case caused the delay; (3) the defendant's own assurances constituted a waiver of most of the time span when an indictment could have been brought and (4) no prejudice has been shown by defendant.

"The burden is on an accused who asserts the denial of his right to a speedy trial to show that the delay was due to the

neglect or wilfulness of the prosecution. A defendant who has himself caused the delay, or acquiesced in it, will not be allowed to convert the guarantee, designed for his protection, into a vehicle in which to escape justice." *State v. Johnson,* 275 N.C. at 269, 167 S.E. 2d at 278; *see also State v. Wright,* 290 N.C. 45, 224 S.E. 2d 624 (1976), *cert. den.,* 429 U.S. 1049, 50 L.Ed. 2d 765, 97 S.Ct. 760 (1977).

The trial court properly denied the motion.

[2, 3] Defendant's other assignment of error deals with the jury instruction on the definition of fiduciary. Defendant was charged with embezzlement in violation of G.S. 14-90 which provides:

"If any person exercising a public trust or holding a public office, or any guardian, administrator, executor, trustee, or any receiver, or *any other fiduciary,* or any officer or agent of a corporation, or any agent, consignee, clerk, bailee or servant, except persons under the age of sixteen years, of any person, shall embezzle or fraudulently or knowingly and wilfully misapply or convert to his own use, or shall take, make away with or secrete, with intent to embezzle or fraudulently or knowingly and willfully misapply or convert to his own use any money, goods or other chattels, bank note, check or order for the payment of money issued by or drawn on any bank or other corporation, or any treasury warrant, treasury note, bond or obligation for the payment of money issued by the United States or by any state, or any other valuable security whatsoever belonging to any other person or corporation, unincorporated association or organization which shall have come into his possession or under his care, he shall be guilty of a felony, and shall be punished as in cases of larceny." (Emphasis added.)

The words "or any other fiduciary" were added by amendment in 1939 to enlarge the scope of the statute after a restrictive reading by the Court in *State v. Whitehurst,* 212 N.C. 300, 193 S.E. 2d 657 (1937) and *State v. Ray,* 207 N.C. 642, 178 S.E. 224 (1935). *See State v. Ross,* 272 N.C. 67, 157 S.E. 2d 712 (1967). Embezzlement in violation of this statute is made up of four elements: (1) the defendant must be the agent of the prosecutor; (2) by terms of his employment, office or other fiduciary relationship he was to receive the property of his principal; (3) that he

received the property in the course of his employment, office or other fiduciary relationship and (4) knowing it was not his own, he converted it to his own use or fraudulently misapplied it. *See, e.g., State v. Ellis,* 33 N.C. App. 667, 236 S.E. 2d 299, *cert. den.,* 293 N.C. 255, 236 S.E. 2d 708 (1977). In this case, defendant was in a fiduciary relationship. He was a promoter of a limited partnership in which the prosecutors of this case, Poindexter and Belton, invested. Behind a corporate front, he was in charge of investing the money in real property. He received and deposited their money in the account of a corporation of which he was secretary-treasurer and which he had designated to be general partner for the limited partnership. The money was not invested as promised and was not returned to those who invested it. Defendant's promises, promotions, receipt and disbursement of money, and his position in American Marketing Corporation gave him a fiduciary relationship with the investors. The funds were misapplied before the partnership was formed. No partnership property was embezzled. The investments of Poindexter and Belton were instead embezzled and they were embezzled by one in a fiduciary relation to them. *See* Annot. 82 A.L.R. 3d 822, 851-54 (1978). Defendant's actions were encompassed in the "any other fiduciary" part of the statute.

[4] "Fiduciary" thus became a crucial term in the case. The trial court instructed "a fiduciary is defined in law as a person having a duty created by his undertaking to act primarily for another's benefit." This definition was adequate for the case. Courts have been hesitant to define the term as is the case with the term "fraud" for fear one may escape the consequence of his actions for failure to meet a technical definition. We re-echo this today and in approving the trial court's wording by no means declare its wording the definition of fiduciary. Our Courts have said:

> "The relation may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence. 'It not only includes all legal relations, such as attorney and client, broker and principal, executor or administrator and heir, legatee or devisee, factor and principal, guardian and ward, partners, principal and agent, trustee and *cestui que trust,* but it extends to any

possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.' "

*Abbitt v. Gregory,* 201 N.C. 577, 598, 160 S.E. 896, 906 (1931) (citations omitted).

The wording of the instruction in this case was similar to this and adequate.

No error.

Judges WEBB and MARTIN (Harry C.) concur.