In the Matter of Bobby Dale STORMS and Sara Frances Taylor Storms, Debtors.

GREAT AMERICAN INSURANCE COMPANY, Plaintiff,

v.

Bobby Dale STORMS and Sara Frances Taylor Storms, Defendants.

Bankruptcy No. 82–00652–7.

Adv. No. 82–0347–AP.

United States Bankruptcy Court, E.D. North Carolina.

March 11, 1983.

Walker Y. Worth, Jr., Fayetteville, N.C., for plaintiff.

C. Christopher Smith, Lumberton, N.C., for defendants.

## MEMORANDUM OPINION

THOMAS M. MOORE, Bankruptcy Judge.

This matter comes on to be heard upon the Complaint to have a certain debt declared nondischargeable.

After considering all the evidence, this Court finds the facts to be as follows:

## FINDINGS OF FACT

A written contract was entered into by Great American Insurance Company (Great American), plaintiff, and Bobby Dale Storms (Storms), defendant, on March 23, 1979, by the terms of which Storms became an agent of Great American for the sale of crop-hail insurance. Storms thereafter was licensed by the State of North Carolina and started doing business as Storms Insurance Agency in Dublin, North Carolina.

Applications for crop-hail insurance were solicited and accepted by Storms' agency in the spring of each farming year. It was up to Storms to find his own customers. The actual policies were issued by Great American shortly after applications were received, and Great American assumed the risk of paying losses. Storms received from Great American monthly statements of account indicating premiums owed on policies issued. There was no account kept between Great American and the policyholders. It was Storms' sole responsibility to collect the premiums, retain a commission, and pay the balance to Great American. Crop-hail insurance was unusual, however, in that premiums were not actually due Great American until November 15 of each policy year, regardless of when collected. On November 15, Storms was personally responsible to Great American for all premiums due, whether collected from policyholders or not. He retained as his commission twenty percent (20%) of gross premiums collected, and a five and one-half percent (5.5%) bonus commission was paid Storms for premiums paid to Great American promptly upon policy issuance.

The March 23, 1979, contract between the parties states that "premiums received by Agent shall be held by him as trustee for Company until paid to Company, and the privilege of retaining commissions ... shall not be construed as changing such fiduciary relationship."

In practice, Storms was permitted to hold until November 15 any premiums he collected prior to that date, and there was no requirement that a separate bank account be maintained for this purpose, nor was there any requirement that Storms periodically account to Great American for premiums he collected during the policy year. Storms routinely and openly commingled collected premiums with the funds of other businesses and operated all from one bank account. Great American was generally unconcerned with the details of premium collection as long as it received the amount due each November 15.

In the spring of 1981, Storms Insurance Agency actively sought crop-hail insurance business. Premiums collected for Great American that year totalled Twenty-Five Thousand Two Hundred Twenty-Four and No/100 Dollars ($25,224.00) and were deposited in the Storms Insurance Agency bank account. This account was used by Storms to operate real estate and construction businesses, as well as the insurance business. There was no separation of funds. During the course of 1981, Storms withdrew the entire Twenty-Five Thousand Two Hundred Twenty-Four and No/100 Dollars ($25,224.00) to meet his various business expenses and corresponding deposits to the account were not made. The November 15, 1981, due date for crop-hail premiums arrived, and Storms, having failed to secure an anticipated bank loan, failed to make any payment to Great American.

Sara Frances Taylor Storms, defendant, was not employed by, or an agent of, Great American. She did not collect insurance premiums for Great American or make any use of collected premiums. Her activity in connection with Storms Insurance Agency was limited to work as a general office assistant.

A Chapter 7 bankruptcy petition was filed by Storms and his wife, Sara Frances Taylor Storms, on March 25, 1982. Twenty-Five Thousand Two Hundred Twenty-Four and No/100 Dollars ($25,224.00) remains due Great American. This adversary proceeding was initiated to determine the dischargeability of the debt. Great American contends the debt is nondischargeable as one resulting from the defalcation of a fiduciary, embezzlement, or larceny. Storms contends no embezzlement or larceny was involved and that he was merely a creditor of Great American, not a fiduciary.

## ISSUE

The issue before the Court is whether Storms' debt to Great American is nondischargeable.

## CONSIDERATION OF ISSUE

Great American relies upon Bankruptcy Code section 523, which denies the discharge of any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny ...." 11 U.S.C. § 523(a)(4).

■ For purposes of § 523(a)(4) and its statutory predecessor, § 17a(4) of the former Bankruptcy Act, a fiduciary relation has been found to exist only where there is a technical or express trust, and not where a trust is imposed because of the very act of wrongdoing out of which the contested debt arose. 3 Collier on Bankruptcy ¶ 523.-14[1][c] at 523–99 (15th ed. 1982).

In *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1338 (5th Cir.1980), the Court quoted from *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 208, 11 L.Ed. 236, 238 (1844), where the meaning of "fiduciary" was considered under the provision of the Bankruptcy Act of 1841 similar to § 17a(4) and present-day § 523(a)(4):

In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the [Bankruptcy Act] .... The act speaks of technical trust and not those which the law implies from the contract.

Thus, the broader state law definition of "fiduciary" contained in the line of cases, *Abbitt v. Gregory*, 201 N.C. 577, 160 S.E. 896 (1931), and *State v. Seay*, 44 N.C.App. 301, 260 S.E.2d 786 (1979), cited by Plaintiff, is not controlling in the § 523(a)(4) context.

■ Necessary to a technical trust are a segregated trust *res* and affirmative trust duties. *Angelle v. Reed*, 610 F.2d at 1340. However, the mere existence of an agreement between parties that purports to create a trust or impose trust-like duties does not impose fiduciary responsibility. For example, an agreement to hold funds "as trustee" or "for" another may be refuted by the actions of the parties. *Snap-On Tools Co. v. Rigsby (In re Rigsby)*, 18 B.R. 518 (Bkrtcy. E.D.Va.1982); *General Electric Credit Corp. v. Graham (In re Graham)*, 7 B.R. 5, 6 B.C.D. 539, 2 C.B.C.2d 695 (Bkrtcy.D.Nev. 1980). Correct contract jargon is not the determining factor. The answers to the following questions are decisive: Was there in fact a duty to segregate funds? Was there an insistence on the segregation of funds? Was the relationship between the parties formal or informal? To what degree, if any, was accounting for funds required? If a fiduciary relation is found, there is no doubt that Storms' personal use of the funds amounted to a defalcation, at the very minimum. 3 Collier at ¶ 523.-14[1][c].

■ Regardless of whether or not a fiduciary relation is found, section 523(a)(4) of the Code will deny discharge of a debt resulting from the debtor's embezzlement or larceny of funds. The initial element of larceny, that the original taking of property

be unlawful, is not present in the case before the Court, for it is not disputed that Storms came into possession of the funds lawfully. Great American directs the Court to North Carolina statutory law, under which certain acts by insurance agents with respect to the handling of premiums are deemed to constitute larceny. "If any insurance agent ... who acts in negotiating a contract of insurance by an insurance company, ... with intent to use, ... takes ... or otherwise disposes of ... money ... received ... as such agent ... contrary to the instructions or without the consent of the company, ... he shall be deemed guilty of larceny." N.C.Gen.Stat. § 14–96. The Court rejects the applicability of this statute, for nowhere in the Bankruptcy Code is there evidence of any intent that § 523(a)(4) denial of discharge be based upon larceny other than common law larceny. See 3 Collier on Bankruptcy ¶ 523.15[3] (15th ed. 1982). A state's legislation that certain conduct is criminal is not determinative of a dischargeability question in bankruptcy. *National Agents Service Company, Inc. v. Duiser (In re Duiser),* 12 B.R. 538, 540 (Bkrtcy.W.D.Va.1981). See, *Stanshine v. Kalmar (In re Kalmar),* 18 B.R. 343 (Bkrtcy.E.D.Pa.1982). To declare a debt nondischargeable on the basis of such a "technical" statutory larceny would be to allow the states to place in the way of a debtor's fresh start § 523(a)(4) obstacles not contemplated within the provisions of the Bankruptcy Code.

Embezzlement is the fraudulent, or knowing and willful, misapplication or conversion of property which belongs to another, by a person to whom such property has been entrusted or into whose hands it has lawfully come. N.C.Gen.Stat. § 14–90 and 3 Collier on Bankruptcy ¶ 523.15[3] (15th ed. 1982) are in basic agreement on this definition. The elements of embezzlement must be proved by clear and convincing evidence to establish a debt as nondischargeable, and, as previously stated herein, a written agreement between the parties may be refuted by the actions of the parties. *Snap-On Tools Corp. v. Rigsby,* 18 B.R. at 521. Where the parties' conduct indicates a debtor-creditor relation, funds that come into the hands of the debtor belong to him and his subsequent use of them is not embezzlement. As insurance premiums came into Storms' hands, he was not required to isolate or account for them, nor was there any restriction on his use of them. Great American's only apparent concern with respect to premiums was that Storms' account be paid by November 15.

Even where the facts of a case show some relation of trust requiring a debtor to hold funds for another, the debtor's subsequent appropriation of the funds will not amount to embezzlement absent proof of the debtor's fraudulent intent. Fraudulent intent may be negated by the fact the debtor used such funds openly, without attempt to conceal, and had reasonable grounds to believe he had the right to so use. *Maine Bonding and Casualty Co. v. Crook (In re Crook),* 13 B.R. 794, 4 C.B.C.2d 1451 (Bkrtcy.D.Maine 1981).

## CONCLUSIONS OF FACT AND LAW

Sara Frances Taylor Storms is not indebted to Great American, and the Court concludes there is no basis for a denial of discharge with respect to her.

Storms was under no obligation to account for premiums received, he was not required or requested to segregate funds, and his relationship with Great American lacked formality, as evidenced by the minimal duties imposed upon him. The Court concludes that Storms was not in a fiduciary relation and discharge of his debt to Great American cannot be denied on the basis of fraud or defalcation by a fiduciary pursuant to § 523(a)(4) of the Bankruptcy Code.

The Court further concludes that Storms committed no larceny within the meaning of § 523(a)(4) of the Code and discharge of the debt cannot be denied on that basis.

The Court further concludes that the facts indicate a debtor-creditor relationship between the parties, that no embezzlement was committed, and that there is no basis for denying the discharge of Storms' debt

to Great American pursuant to § 523(a)(4) of the Bankruptcy Code.

Judgment will be entered accordingly.