**In re Robert F. KOELFGEN, Debtor.**

**UNITED AMERICAN INSURANCE COMPANY, Plaintiff,**

v.

**Robert F. KOELFGEN, Defendant.**

**Bankruptcy No. 4-87-94.**
**Adv. No. 4-87-71.**

United States Bankruptcy Court,
D. Minnesota.

July 18, 1988.

Richard J. Pearson, New Brighton, Minn., for defendant/debtor.

David W. Larson, Minneapolis, Minn., for plaintiff.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled adversary proceeding came on for trial before the undersigned on June 7, 1988. David W. Larson appeared on behalf of United American Insurance Company ("UAI"); Richard J. Pearson appeared on behalf of Richard F. Koelfgen ("debtor"). Plaintiff seeks to have this court declare debtor's debt to it to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 103(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Based on the evidence, and all the files, records and proceedings herein, I find and conclude as follows:

### FACTS

Defendant, Robert F. Koelfgen, entered into a "Vested Commission Contract" ("the Contract") to act as an independent contractor to sell insurance products for plaintiff, United American Insurance Company. Koelfgen would collect the gross premium from the customer, deduct his commission and remit the net premium to UAI. Koelfgen's contract with UAI provided in part:

1. **APPOINTMENT AND RELATIONSHIP.** The Agent is hereby appointed a General Agent of the Company and is authorized to solicit in person or through sub-agents contracted by the Agent, applications for insurance in the Company, to forward same to the Company for approval or rejection, and to collect the initial premium payments due on such applications. *It is expressly agreed that the relationship of the Agent or sub-agent with the Company shall be that of an Independent Contractor only, and that nothing contained herein shall*

be construed to create the relationship of employer and employee. The Company may from time to time prescribe rules respecting the requirements of eligibility for applicants of insurance, not interfering with freedom of action of the Agent, or sub-agent, which rules shall be observed and conformed to by said Agent or sub-agent. The general transactions of business will be governed by Company rules which may be changed, altered, or amended from time to time by the Company. (emphasis added)

Koelfgen had authority under the Contract to endorse and deposit premium checks he received from policy applicants into his business bank account. The Contract required Koelfgen to "immediately remit to the company all premiums collected by the agent or sub-agents in excess of the agent's initial commission thereon", thereby retaining his commissions from each policy. Koelfgen opened a bank account in the name of Minnesota Insurance Brokers in which he conducted all of his business transactions as an insurance agent with UAI. His insurance contract did not require Koelfgen to establish a trust account to transact his business with UAI, therefore, Koelfgen did not maintain a business trust account. As a matter of course, Koelfgen would deposit the entire gross premium check in his business account and once a month would remit to UAI the net premiums received for the month minus his commission. Along with the remittance of net premiums Koelfgen would submit a "record of business" which reflected all applicants that were solicited, the premiums collected, and the net premiums due UAI.

After Koelfgen had deducted his commission and sent the premiums to UAI, customers would, at times, cancel their policies. The insureds to whom Koelfgen sold policies had the right to cancel those policies or they often upgraded their coverage. Also, UAI would not always approve insurance coverage for all the applicants. The Contract in this regard stated:

The Agent shall make prompt refund of all money collected on any application on which the Company declines to issue a policy, and on any application on which a policy shall be issued by the Company and not accepted by the applicant. The Company shall at all times have the right to reject applications for insurance without specifying cause. If any premiums shall be refunded by the Company for any reason or cause either before or after termination of this Contract, the Agent shall repay to the Company on demand all commissions previously allowed on that premium.

When an insured cancelled its policy, UAI issued a check for the entire premium to Koelfgen, who in turn delivered this check to the customer. Because Koelfgen already retained part of the premium as a commission he was to return his commission to UAI. UAI held a debit account in Koelfgen's name which represented the charge-back on commissions when an insurance policy would be cancelled. Koelfgen would then be required to clear the debit account with UAI.

Koelfgen testified his business took a dramatic drop in 1986 resulting from a lack of new business and an increase in cancellation of insurance policies due in part to increased competition with health maintenance organizations ("HMO's"). As a direct result Koelfgen incurred a substantial debit balance on his commission return account with UAI. Koelfgen's problems escalated when he attempted to satisfy his commission return account with net premiums due UAI, as well as paying for business expenses out of the business account when Koelfgen did not have sufficient funds.

UAI demanded that Koelfgen bring his return commission account and net premium due to UAI up to date in order to maintain his contract with UAI. Koelfgen sent checks to UAI totalling $9,390.00 that were returned by the bank for nonsufficient funds. Of this amount, $7,390.00 was sent as net premiums collected by Koelfgen on behalf of UAI and $2,000.00 represented payment on the return commission account. UAI claims that including the $2,000.00 Koelfgen attempted to pay on the return

commission account, Koelfgen did not repay $4,917.48 of the return commissions which UAI refunded to insurance applicants.

On October 7, 1986, Koelfgen requested that his account with UAI be placed on a "gross premium" basis so he could eliminate further problems with the return commission account while also trying to pay off the debit balance. Thereafter on October 16, 1986, UAI sent Koelfgen a letter accepting his proposal until his return commission account was brought up to date, although his bank authorization to deposit gross premium checks in his business account was suspended.

Failing to bring his UAI accounts up to date, Koelfgen received his contract termination in a certified letter dated October 28, 1986. On November 12, 1986, UAI sent Koelfgen a certified letter indicating Koelfgen owed UAI $12,307.48. This figure was comprised of $7,390.00 in net premiums due UAI as a result of checks returned by Koelfgen's bank marked nonsufficient funds, and $4,917.48 represented the balance of Koelfgen's return commission account.

Koelfgen filed a petition for relief under Chapter 7 of the Bankruptcy Code on January 9, 1987. UAI commenced this adversary proceeding under 11 U.S.C. § 523(a)(4) alleging Koelfgen's debt to UAI is not dischargeable because Koelfgen's debt arose out of a fraud or defalcation while acting in a fiduciary capacity, and embezzlement.

### DISCUSSION

#### A. Existence of a Fiduciary Relationship

The Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny...." 11 U.S.C. § 523(a)(4). Initially plaintiff argues that a fiduciary relationship existed between Koelfgen and UAI.

■ The threshold requirement under section 523(a)(4) to hold a debt nondischargeable for fraud or defalcation is a finding that the debtor was a fiduciary of the creditor-plaintiff. *Clark v. Taylor* (*In re Taylor*), 58 B.R. 849, 852 (Bktcy.E.D. Va.1986). The meaning of "fiduciary capacity" is very limited with respect to section 523(a)(4). Generally, federal law determines who is a fiduciary under section 523(a)(4). *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986); *Angelle v. Reed* (*In re Angelle*), 610 F.2d 1335, 1341 (5th Cir. 1980). However, under limited circumstances, state law may create the requisite fiduciary relationship. *Barclays American/Business Credit, Inc. v. Long* (*In re Long*), 774 F.2d 875, 878 (8th Cir.1985). *Long* recognized that a state law may create fiduciary status in a corporate officer within bankruptcy proceedings, however, the state law classification is not conclusive. *See, MacArthur Co. v. Crea* (*In re Crea*), 31 B.R. 239, 244 (Bktcy.D.Minn. 1983). Plaintiff is correct in arguing that under state law a fiduciary relationship may exist between the insurance company and agent, but its argument fails because the contract between Koelfgen and UAI was not an express or technical trust.

■ The concept of "fiduciary capacity" is limited to express or technical trusts, not those implied by law. *Long*, 774 F.2d at 878, *Crea*, 31 B.R. at 244. *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934). Express or technical trusts are formed by direct and positive acts of both parties manifested by some instrument in writing, whether by deed, will, or otherwise. *Morgan v. American Fidelity Fire Ins. Co.*, 210 F.2d 53, 55, 56 (8th Cir.1954). The fiduciary capacity must have existed before the defalcation giving rise to the claim. *Hensel v. Barker* (*In re Barker*), 40 B.R. 356, 359 (Bktcy.D.Minn.1984).

■ Courts look at the contract between the parties to determine the existence of a fiduciary relationship. A fiduciary relationship is found between an insurance agent and company when the insurance agent enters into a contract with an explicit agreement wherein an express trust relationship is contemplated. *Morgan*, 210 F.2d at 55 (8th Cir.1954); *Union Mutual Life Ins. Co. v. Murphy* (*In re Murphy*), 9

B.R. 167, 173 (Bktcy.E.D.Va.1981). The court in *Murphy* found a fiduciary relationship was expressed in the insurance contract and the debtor insurance agent knew he was to act in a fiduciary capacity with respect to remitting net premiums received. 9 B.R. at 173.

Plaintiff argues this case is analogous to *American Surety Co. of New York v. Greenwald,* 223 Minn. 37, 25 N.W.2d 681 (1946) in which the Minnesota Supreme Court held that an insurance agent acts in a fiduciary capacity to the insurance company. The trust between the plaintiff and defendant in *Greenwald* was created in a letter which outlined the agreement, thereby creating a fiduciary relationship. 223 Minn. at 42, 25 N.W.2d at 684. The defendant received and collected monies as a trustee under an express trust. The Supreme Court declared a trust is created when the intention is that the monies shall be kept or used as a separate fund for the benefit of the payor or a third person. Whereas, a debt is created when the intention is that the person receiving the monies shall have unrestricted use thereof, being liable to pay similar accounts whether with or without interest to the payor or third party. *Id.*

■ I find this case factually different from *Greenwald.* Here, the vested commission contract does not create any fiduciary relationship between UAI and Koelfgen because the agreement expressly states the relationship "shall be that of an Independent Contractor only." There is nothing in the contract which would indicate that there was an express or technical trust. The substance of this agreement is that it created a debtor/creditor relationship. Koelfgen sold insurance policies for UAI for which he received a commission. UAI authorized Koelfgen to collect the premiums and required him to remit the net premiums. Koelfgen was not obligated to segregate the funds collected or otherwise hold them in trust. The contractual language in which Koelfgen agreed to "immediately remit to the Company all premiums collected by the Agent of Sub-agents in excess of the Agent's initial commission

thereon" is nothing more than a collection device for UAI.

I conclude that no trust agreement exists between UAI and Koelfgen.

The circumstances of this case simply do not support a finding that Robert Koelfgen acted in a fiduciary capacity under 11 U.S. C. § 523(a)(4). This is true in light of the fact that plaintiff must prove its case by clear and convincing evidence. *Schwartz v. Renville Farmers Co-op Credit Union,* 44 B.R. 266, 269 (D.Minn.1984); *Iowa Mutual Ins. Co. v. Olson (In re Olson),* slip op. at 3–6, Bky. No. 4–85–2606 Adv. No. 4–86–17 (Bktcy.D.Minn. Oct. 15, 1986). There was no express or technical trust imposed on the funds in debtor's possession. Where there is no fiduciary relationship between the creditor and debtor, there can be no action for fraud or defalcation. The relationship between UAI and Koelfgen was purely debtor/creditor.

### B. Embezzlement

UAI asserts debtor's debt cannot be discharged because these funds were embezzled when they properly came into debtor's hands from insurance applicants, and debtor misappropriated the funds to his own use. It is debtor's position that there was no intent to defraud UAI, therefore, no embezzlement occurred.

■ Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. *Moore v. United States,* 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422 (1895); *Commonwealth of Virginia Commission of Game and Inland Fisheries v. Myers (In re Myers),* 52 B.R. 901, 905 (Bktcy.E.D.Va. 1985). The plaintiff must prove each element of embezzlement by clear and convincing evidence. *Myers,* 52 B.R. at 905 (Bktcy.E.D.Va.1985); *Great American Insurance Co. v. Storms (In re Storms),* 28 B.R. 761, 765 (Bktcy.E.D.N.C.1983).

■ The elements of embezzlement are 1) appropriation of funds by debtor for his benefit, and 2) appropriation of funds with fraudulent intent or deceit. *Savonarola v. Beran,* 79 B.R. 493, 496 (Bktcy.N.D. Fla.1987); *Skemp v. Michel (In re Michel),* 74 B.R. 88, 90 (Bktcy.N.D.Ohio 1987);

*Clark v. Taylor* (*In re Taylor*), 58 B.R. 849, 855 (Bktcy.E.D.Va.1986). Where the parties' conduct indicates a debtor/creditor relation, funds that come into the hands of the debtor belong to him and any subsequent use of them is not embezzlement. *Storms*, 28 B.R. at 765.

The facts of this case are very similar to those in the *Storms* decision and the issue of embezzlement can be decided upon the rationale applied in *Storms*. In *Storms* an insurance agent collected premiums for the sale of crop hail insurance which were due annually on November 15. 28 B.R. at 763. The agent's sole responsibility was to "collect the premiums, retain a commission, and pay the balance to Great American." *Id.* Prior to November 15 the agent would use the money collected for premiums to operate his other businesses, he was not required to segregate the funds. *Id.* The court in *Storms* concluded the parties' conduct indicated a debtor/creditor relationship and that no embezzlement was committed. *Id.* at 765. This conclusion was based upon the fact that any fraudulent intent was negated by the debtor's open use of the funds without any attempt to conceal. *Id.*

■ An almost identical situation was present with Koelfgen and UAI. As Koelfgen collected insurance premiums he was not required to segregate the funds or hold them in trust for UAI. Koelfgen was to retain his commission and once a month remit the net premium to UAI. Furthermore, Koelfgen openly used the funds in his business account to operate his business. Plaintiff has failed to prove by clear and convincing evidence that there was any fraudulent intent or deceit on the part of Koelfgen to appropriate the funds for his own use. With respect to the $4,917.48 owed on the commission return account, plaintiff's claim fails because the facts show that this was purely a debtor/creditor relationship and Koelfgen in no way could have obtained these funds fraudulently. Plaintiff's embezzlement claim also fails with respect to the $7,390.00 in net premiums owed. As the insurance premiums came into Koelfgen's possession, he was not required to isolate or segregate them into a trust account. Koelfgen used these funds openly from his business account to operate his agency. Plaintiff has not shown that Koelfgen fraudulently intended to misappropriate the premiums. *See Storms*, 28 B.R. at 765. In support of this conclusion is the fact that Koelfgen's relationship with UAI deteriorated when he used money owed for net premiums to pay off his return commission account, not embezzlement as UAI suggests.

The facts of this case show the parties' conduct indicated a debtor/creditor relation and that funds that came into the possession of Koelfgen belonged to him and his subsequent use of them was not embezzlement. UAI's only apparent concern with respect to premium and return commission was that Koelfgen's account be cleared every month. In the absence of clear and convincing evidence, there is no basis for denying the discharge of Koelfgen's debt to UAI pursuant to 11 U.S.C. § 523(a)(4).

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

The debt of defendant, Robert F. Koelfgen to plaintiff, United American Insurance Company is discharged in his bankruptcy case.

LET JUDGMENT BE ENTERED ACCORDINGLY.