In re Diane H. LANE.

In re Thomas L. LAUGHLIN.

BUILDERS SUPPLY COMPANY OF PETERSBURG, INC.

v.

Diane H. LANE, Individually and t/a Tri–City Construction.

BUILDERS SUPPLY COMPANY OF PETERSBURG, INC.

v.

Thomas L. LAUGHLIN, Individually and t/a Tri–City Construction.

Bankruptcy Nos. 89–00786–RT, 89–00785–RS.

Adv. Nos. 89–0352–RT, 89–0351–RT.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

May 16, 1990.

Marcus D. Minton, White, Hamilton, Wyche & Shell, Petersburg, Va., for debtors/defendants.

Raymond J. Sinnott, III, Sinnott & Nuckols, Richmond, Va., for plaintiffs.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Builders Supply Company ("Builders Supply") requests the court to determine that the debts accrued by Diane H. Lane and Thomas L. Laughlin while trading as Tri–City Construction Company are excepted from discharge. Builders Supply contends that the debtors' violation of Va.Code § 43–13 [1] constitutes larceny under § 523(a)(4) of the Bankruptcy Code.

A combined trial was held on both complaints on October 3, 1989, at which time the court took the matter under advisement and directed the parties to submit briefs. Based upon the evidence adduced at trial and the relevant case law, the court holds that the debts of both defendants are dischargeable in bankruptcy. The following memorandum opinion shall constitute findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

## FINDINGS OF FACT

Laughlin and Lane owe Builders Supply the sum of $28,382.07 on unpaid accounts incurred by their now defunct construction business. On May 26, 1989, Builders Supply filed complaints against Laughlin and Lane for a determination of the dischargeability of this debt on the theory that a violation of Va.Code § 43–13 is prima facie evidence of larceny under 11 U.S.C. § 523(a)(4). Because identical facts and issues are presented, the two adversary proceedings were consolidated for trial.

At trial the evidence showed that Lane and Laughlin together operated Tri–City Construction from 1986 to 1988; they considered their business a partnership. Tri–City financed construction projects by obtaining materials on credit and with cash from working capital loans made by the Bank of Southside Virginia. Since the business never made a profit, the debtors used funds from new job loans to pay debts incurred on previous jobs. They also contributed their own money to the business.

John H. VanLandingham, president of Builders Supply, testified that he had dealt with the debtors throughout the existence of their construction business. He allowed them to purchase materials on credit with a separate account for each construction job.

The plaintiff's evidence focused on three construction jobs. The largest open account remaining is for the Moody construction site. On that job Lane and Laughlin borrowed a total of $99,483.60 in draws from the Bank of Southside Virginia, and they signed a lien waiver for each draw received. However, instead of paying Builders Supply for the construction materials furnished on the Moody site, when Tri–City began to fall behind on payment the draw money was used to pay older accounts.

## CONCLUSIONS OF LAW

The debtors do not dispute that in violation of Va.Code § 43–13 [2] they used funds from loans upon which they had signed lien waivers for other construction sites. Thus they admit they committed acts which con-

---

1. The text of the statute is delineated in footnote 2, *infra*.

2. Va.Code § 43–13 states:

    Any contractor or subcontractor or any officer, director or employee of such contractor or subcontractor who shall, with intent to defraud, retain or use the funds, or any part thereof, paid by the owner or his agent, the contractor or lender to a subcontractor under any contract for the construction ... of any building ... for any other purpose than to pay persons ... furnishing material for such construction ... shall be *guilty of larceny* in appropriating such funds for any other use while any amount for which the contractor ... may be liable or become liable under his contract for such labor or materials remains unpaid, and may be prosecuted upon complaint of any person or persons who have not been fully paid any amount due them.

    The use by any contractor ... of any moneys paid under the contract, before paying all amounts due or to become due for ... material furnished ... for any other purpose than paying such amounts, shall be prima facie evidence of intent to defraud.

Va.Code Ann. § 43–13 (Repl.Vol.1986).

stitute larceny under Va.Code § 43–13. Therefore this opinion must simply address one issue: Does a violation of a state statute expanding the legal definition of larceny beyond the common law definition automatically result in a finding of a nondischargeable debt under 11 U.S.C. § 523(a)(4)?

Section 523(a)(4) of the Bankruptcy Code provides an exception to the discharge of a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. § 523(a)(4) (1988). The essence of Builders Supply's complaint is that because the debtors are guilty of larceny under Va.Code § 43–13, the debts incurred in violation of that statute are nondischargeable under § 523(a)(4).

The plaintiff has the burden of proof in dischargeability actions. *Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir.1988); *Seery v. Basham (In re Basham)*, 106 B.R. 453, 454 (Bankr.E.D.Va.1989). But the plaintiff is not required to prove the existence of a fiduciary relationship under § 523(a)(4) when the legal theory is larceny. *Snap–On Tools Corp. v. Rigsby (In re Rigsby)*, 18 B.R. 518, 520 (Bankr.E.D.Va. 1982).

At the outset the court notes that § 43–13 is a criminal statute. This statute extends the definition of larceny in Virginia beyond the traditional common law meaning. Specifically, § 43–13 determines that a contractor's use of funds for a purpose other than to pay the provider of materials is prima facie evidence of larceny. The purpose of the statute is to punish fraud; prosecution of a contractor for violating this code section does not affect the debt itself. *Overstreet v. Commonwealth*, 193 Va. 104, 110, 67 S.E.2d 875, 879 (1951).

Builders Supply maintains that since violation of this statute results in larceny under Virginia law, it should also connote proof of § 523(a)(4) larceny. While state law can be helpful it is not prima facie

conclusive. A determination of § 523(a)(4) larceny is a matter of federal common law. *Chicago City Bank & Trust Co. v. Jaffe (In re Jaffe)*, 111 B.R. 701 (Bankr.N.D.Ill. 1990) (LEXIS, Bkrtcy library, Cases file); *Great American Ins. Co. v. Storms (In the Matter of Storms)*, 28 B.R. 761, 765 (Bankr.E.D.N.C.1983).

The issue here is similar to that in *In the Matter of Storms*, 28 B.R. 761 (Bankr.E.D. N.C.1983), which dealt with a North Carolina statute providing that certain acts of insurance agents with respect to the handling of premiums constituted larceny.[3] In *Storms*, Bankruptcy Judge Thomas Moore refused to declare a debt nondischargeable simply because it fell within the statutory definition of larceny, stating in part:

"A state's legislation that certain conduct is criminal is not determinative of a dischargeability question in bankruptcy."

*Storms*, 28 B.R. at 765 (citing *National Agents Service Co., Inc. v. Duiser (In re Duiser)*, 12 B.R. 538, 540 (Bankr.W.D.Va. 1981)).

Additionally Judge Moore recognized that the bankruptcy code gives no indication that Congress intended the definition of larceny under § 523(a)(4) to be extended beyond common law larceny.

To declare a debt nondischargeable on the basis of such a 'technical' statutory larceny would be to allow the states to place in the way of the debtor's fresh start § 523(a)(4) obstacles not contemplated within the provisions of the bankruptcy code.

*Storms*, 28 B.R. at 765.

No written opinion has been found specifically addressing the use of Va.Code § 43–13 in the context of § 523(a)(4). However, in *Moseley Assocs. Inc. v. Lieberman (In re Lieberman)*, 14 B.R. 881 (Bankr.E. D.Va.1981), the creditor argued that fraud implied in law pursuant to § 43–13 was sufficient proof of fraud under § 523(a)(2)(A). Bankruptcy Judge Black-

---

**3.** If any insurance agent ... who acts in negotiating a contract of insurance by an insurance company, ... with intent to use, ... takes ... or otherwise disposes of ... money ... received ... as such agent ... contrary to the instructions or without the consent of the company, ... he shall be deemed guilty of larceny.

N.C.Gen.Stat. § 14–96.

well M. Shelley stated that "[f]raud implied in law such as that alleged under Virginia Code § 43–13 is insufficient under bankruptcy law." *Lieberman*, 14 B.R. at 883–884. Although *Lieberman* was decided under § 523(a)(2)(A), there is no reason to confine the legal analysis to that particular subsection.

After considering the *Lieberman* opinion addressing the use of Va.Code § 43–13 in the context of § 523(a)(2)(A), as well as cases exploring the application of comparable state larceny statutes to § 523(a)(4) larceny, this court concludes that § 523(a)(4) requires proof of common law larceny before a debt will be excepted from discharge due to larceny. Builders Supply proffered no evidence that the defendants committed common law larceny.

Therefore, since proof that the debts were incurred in violation of Va.Code § 43–13 alone is not sufficient under § 523(a)(4), the court finds that the debts in question are dischargeable in bankruptcy.

A separate order will be entered.