**In re Gary Kenneth SHREVE, Debtor**

**Smith Mountain Building Supply, LCC, Plaintiff**

v.

**Gary Kenneth Shreve, Defendant.**

**Bankruptcy No. 06–71208.**
**Adversary No. 06–07136.**

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

March 31, 2008.

George I Vogel, III, Vogel & Cromwell LLC, Roanoke, VA, for Plaintiff.

Malissa Lambert Giles, Giles & Lambert PC, Roanoke, VA, for Defendant.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

At Roanoke in said District this 31st day of March, 2008:

The matter before the court for decision involves a complaint by Smith Mountain Building Supply, LCC (herein Smith Mountain) to determine the dischargeability of a debt in the amount of $165,755.51 owed by Gary Kenneth Shreve (herein Debtor) to Smith Mountain. Smith Mountain claims that Debtor's debt to Smith Mountain is the product of larceny, as defined by Va.Code Ann. § 43–13,[1] and therefore, non-dischargeable under 11 U.S.C. § 523(a)(4) of the bankruptcy code. A trial on the matter was held December 11, 2007. In addition, Debtor and Smith Mountain submitted memoranda of authority and argument which set forth their respective positions on the dischargeability of the debt. After considering the evidence presented at trial and relevant case authority, the court holds that Debtor's debt to Smith Mountain is dischargeable in bankruptcy.

### *Background:*

Debtor was a general contractor who constructed residential homes for third party owners in Franklin County, Virginia. Debtor constructed each home pursuant to a separate contract and invoiced the client separately. The invoice included, among other costs, the amount for materials used in the construction of the home. After receiving payment from a client, Debtor deposited the funds into a checking account with Planters Bank and Trust. Debtor did not segregate the funds he

---

1. The text of the statute is provided in footnote 2, *infra.*

received from each job into separate accounts. Debtor used this account not only to pay costs associated with his construction business but also for personal living expenses. When Debtor received payment for a particular job, he often used the funds to pay the materialmen and laborers that supplied materials or labor on jobs other than the particular job for which he was paid. In addition, Debtor used funds received from construction projects for personal expenses before ensuring that all the materialmen and laborers from the job which produced the payment received full payment for labor and materials provided. Despite failing to ensure that funds received from a particular project were first paid to the materialmen and laborers for that particular project, Debtor executed mechanic's lien waivers indicating that he had paid all laborers and materialmen that performed services or supplied materials for each particular job.[2]

Smith Mountain was one of many suppliers used by Debtor in his construction business. Smith Mountain supplied materials on credit to Debtor pursuant to a Credit Application and Guarantee Agreement. William West, vice president of Smith Mountain Building Supply, testified that he allowed Debtor to purchase materials on credit with a separate account for each construction job. Although Smith Mountain knew that Debtor was not current on his accounts, Smith Mountain continued to extend credit to Debtor for new construction projects. (Oral Transcript, p. 26). Smith Mountain did not monitor the Debtor's construction draws and payments to it on a job by job basis. Instead, as Mr. West testified, Smith Mountain would apply the funds received from the Debtor to the oldest accounts due, regardless of the job source of the payment. (Oral Transcript, p. 25).

Due to health problems, Debtor fell late in his payments to Smith Mountain. Debtor's health problems eventually prompted him to stop work as a general contractor, which left him unable to pay the debts incurred to Smith Mountain in his construction business. Under the terms of the Credit Application and Guarantee Agreement, Smith Mountain filed suit against Debtor in the Circuit for Franklin County (herein the Circuit Court). The Circuit Court awarded judgment by default for Smith Mountain against Debtor in the amount of $165,755.51, with interest thereon at the rate of 2% per month from August 25, 2006 and attorneys fees in the amount of $40,712.68. Of the total judgment, the sum of $143,878.33 reflected the amount owed by Debtor on unpaid accounts for materials. (Oral Transcript, p. 19). On October 16, 2006, Debtor filed Chapter 7.

### Legal Positions of the Parties

Smith Mountain claims that Debtor's debt to Smith Mountain for unpaid accounts is nondischargeable under 11 U.S.C. § 523(a)(4) of the bankruptcy code because the debt is the result of Debtor's larcenous actions in the handling of funds received from job sites. Smith Mountain concedes that Debtor's actions in relation to his unpaid accounts do not constitute common law larceny, (Oral Transcript, p. 46), but directs the court's attention to Va.Code Ann. § 43–13,[3] which defines the

---

**2.** Subcontractors for labor or materials suppliers were not required to sign lien waivers.

**3.** Virginia Code § 43–13 provides:
 Any contractor ... who shall, with intent to defraud, retain or use the funds, or any part thereof, paid by the owner or his agent, the contractor or lender to such contractor or

by the owner or his agent, the contractor or lender to a subcontractor under any contract for the construction, removal, repair or improvement of any building or structure ... for any other purpose than to pay persons performing labor upon or furnishing material for such construction ... shall

use of funds received by a general contractor for purposes other than payment in full for labor or materials for construction received from job sites as larceny under Virginia law. Smith Mountain contends that Debtor's violation of Va.Code § 43–13 constitutes larceny for the purposes of § 523(a)(4) of the bankruptcy code, and therefore, precludes the discharge of the debt owed by Debtor to Smith Mountain for unpaid accounts.[4] Debtor does not dispute that he violated Va.Code § 43–13. (Oral Transcript, p. 29), but asserts that a finding of nondischargeability under § 523(a)(4) requires a finding of common law larceny.

### Discussion:

■ The issue for decision is whether Debtor's violation of Va.Code § 43–13, which expands the definition of larceny beyond the common law definition, renders Debtor's debt to Smith Mountain for unpaid accounts nondischargeable under 11 U.S.C. § 523(a)(4). One of the central purposes of bankruptcy is to provide a fresh start to "honest but unfortunate" debtors hampered by the demands of preexisting debt. *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). Notwithstanding the preference for a debtor's fresh start, 11 U.S.C § 523 of the bankruptcy code provides several exceptions to the general discharge of an individual's debt. *Id.* Because exceptions to discharge hinder the debtor's fresh start, the exceptions to discharge under § 523 are construed narrowly. *In re Rountree*, 478 F.3d 215, 219 (4th Cir.2007) (citing *In re Biondo*, 180 F.3d 126, 130 (4th Cir.1999)). In addition, creditors bear the burden of proving the nondischargeability of a debt by a preponderance of the evidence. *Grogan*, 498 U.S. at 287, 111 S.Ct. 654.

■ Pertinent to the matter before this court, § 523(a)(4) of the bankruptcy code excepts from discharge any debt which is the product of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). To determine whether a debt is the product of "larceny" within the meaning of § 523(a)(4), the federal common law definition applies. *See In re Criswell*, 52 B.R. 184, 202 (Bankr.E.D.Va.1985) (applying the federal common law definition of larceny in determining whether § 523(a)(4) precludes the discharge of a debt); *In re Davis*, 262 B.R. 663, 672 (Bankr.E.D.Va.2001); *In re Moon*, 1997 WL 34625685, *12, 1997 Bankr.LEXIS 2346, * 39 (E.D.Va.1997); *In re Lane*, 115 B.R. 81, 83 (Bankr.E.D.Va.1990). "[N]owhere in the Bankruptcy Code is there any evidence of any intent that § 523(a)(4)

---

be guilty of larceny in appropriating such funds for any other use while any amount for which the contractor ... may be liable or become liable under his contract for such labor or materials remains unpaid, and may be prosecuted upon complaint of any person or persons who have not been fully paid any amount due them.

The use by any such ... of any moneys paid under the contract, before paying all amounts due or to become due for labor performed or material furnished for such building or structure, for any other purpose than paying such amounts, shall be prima facie evidence of intent to defraud.

Va.Code Ann. § 43–13 (2007).

4. The record reflects that $143,878.33 represents the total amount Debtor owed to Smith Mountain on unpaid accounts. With respect to that sum, Smith Mountain concedes that any amount attributable to Debtor's miscellaneous account with Smith Mountain is not under the purview of Va.Code § 43–13. (Oral Transcript, p. 18–19). As a result, Smith Mountain does not challenge the dischargeability of the miscellaneous account debt. (Oral Transcript, p. 18–19).

denial of discharge be based upon [any definition of] larceny other than common law larceny." *In re Storms,* 28 B.R. 761, 765 (Bankr.E.D.N.C.1983) (citing 3 *Collier on Bankruptcy* P 523.15[3] (15th ed.1982)). Accordingly, the fact that a state may expand the definition of larceny beyond the common law definition is not determinative of the question of dischargeability under § 523(a)(4). *See In re Duiser,* 12 B.R. 538, 539–540 (Bkrtcy.W.D.Va.1981) (stating that a state's determination that certain conduct is criminal is not determinative of the issue of dischargeability in bankruptcy) (citing *In re Hazelwood,* 17 C.B.C. 742, 745 (E.D.Tenn.1978)); *See also In re Barrett,* 156 B.R. 529, 533 n. 3 (Bkrtcy.N.D.Tex.1993) (finding that a court is not bound by the state law definition of larceny) *aff'd,* 1999 WL 184117, 1999 U.S. Dist. LEXIS 4223 (N.D.Tex. 1999).

This court's holding that federal common law provides the definition of larceny under § 523(a)(4) is consistent with the Bankruptcy Code's policy of construing exceptions to discharge narrowly and promoting debtors' fresh start. "To declare a debt nondischargeable on the basis of ... a 'technical' statutory larceny would be to allow states to place in the way of a debtor's fresh start § 523(a)(4) obstacles not contemplated with the provisions of the Bankruptcy Code." *In re Storms,* 28 B.R. at 765. Furthermore, a federal common law definition of larceny under § 523(a)(4) is statutorily consistent with the Fourth Circuit's interpretation of other definitions within § 523(a)(4). *Cf. In re Harrell,* 1999 WL 150278, *2, 1999 U.S.App. LEXIS 4743, *7 (4th Cir.1999) ("The definition of 'fiduciary' for purposes of § 523(a)(4) is controlled by federal common law ....") (citing *In re Miller,* 156 F.3d 598, 602 (5th Cir.1998)).

 Under the federal common law, larceny is defined as the "fraudulent taking and carrying away [of] the property of another with intent to convert such property to the taker's use without the consent of the owner." *In re Criswell,* 52 B.R. at 202 (quoting *In re Graziano,* 35 B.R. 589, 594 (Bankr.E.D.N.Y.1983)). Debtor's violation of Va.Code § 43–13 does not constitute a common law larceny. Although Debtor received payment from construction projects subject to the duty to distribute the funds to subcontractors and laborers, the funds received from each construction project were lawfully obtained by Debtor. No larceny can exist for the purposes of section 523(a)(4) where a debtor lawfully obtains funds pursuant to contract. *See In re Criswell,* 52 B.R. at 203–204 (asserting that a finding that the funds were lawfully obtained by the debtor precluded the court from finding that any larceny existed under § 523(a)(4)). As a result, Debtor's violation of Va.Code. § 43–13 does not preclude the discharge of the debt owed to Smith Mountain for unpaid accounts.

### Conclusion:

Whether larceny exists for the purposes of § 523(a)(4) is governed by the federal common law. Debtor's failure to comply with the requirements of Va.Code § 43–13 does not constitute larceny under the federal common law. This court holds that Debtor's debt to Smith Mountain is dischargeable. Accordingly, it is

### ORDERED:

That Smith Mountain's complaint seeking to deny the discharge of Debtor's debt to Smith Mountain for unpaid accounts is DENIED.