**In re Bernard McLAUGHLIN, Debtor.**

**JOHN DEERE CREDIT SERVICE, Plaintiff,**

v.

**Bernard McLAUGHLIN, Defendant.**

Bankruptcy No. 88–212.
Adv. No. 88–89.

United States Bankruptcy Court,
D. New Hampshire.

Dec. 14, 1989.

Richard Mullaly, W. Lebanon, N.H., for John Deere Credit Service.

Timothy P. Smith, Manchester, N.H., for Bernard McLaughlin.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This chapter 11 adversary proceeding involves a complaint filed by a creditor, John Deere Credit Service, against the debtor. The complaint seeks to declare the creditor's debt nondischargeable pursuant to § 523(a)(6) because the debtor allegedly willfully and maliciously converted property subject to the creditor's security interest. This Court has jurisdiction under 28 U.S.C. § 157(b)(2)(B), (I), and the general reference order dated February 1, 1985 by the U.S. District Court for the District of New Hampshire. This matter came on for a hearing on May 15, 1989, and on that date I dictated my findings of fact into the record.

### FINDINGS OF FACT

1. On September 25, 1985, debtor purchased a diesel tractor, loader bucket, rotary cutter and trailer for personal use from plaintiff pursuant to a retail installment contract and security agreement. The original total purchase price was $20,-851.00.

2. In July, 1986, the debtor sold these items to a person of whom the debtor kept no record.

3. The debtor did not inform the plaintiff of the sale, nor did the debtor attempt to get the plaintiff's prior consent.

4. The debtor was aware of the security interest in the property at the time of sale. Moreover, due to his experience as an automobile salesman for eighteen years he knew the security agreement meant the secured lender was entitled to get paid out of the collateral if he did not pay off the debt.

5. The debtor used the money to start a used car business. The debtor honestly believed he could pay the debt to the plaintiff with his anticipated future business success.

6. At the time of the sale, the debtor had substantial unencumbered assets, including home equity and a vacation home. These items enabled debtor to obtain $200,-000.00 in financing by November 1986 to enhance his used car business. In February 1988 he received $500,000.00 from New England Mortgage Company for the business.

7. Debtor's used car business failed when a bank that had previously committed for further financing refused to honor floor planning arrangements for new vehicles which the debtor had purchased, and otherwise obligated himself upon, in reliance upon the previous commitment.

8. After selling the collateral, the debtor made a few more scheduled payments under his installment sales contract before ceasing payment. The Court does not believe these payments were made in an attempt to conceal the conversion from the plaintiff.

### STATUTORY PROVISION

The only statutory provision at issue is 11 U.S.C. § 523(a)(6). That section reads in pertinent part:

(a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this

title does not discharge an individual from any debt—

\*    \*    \*    \*    \*    \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

## DISCUSSION

There are numerous conversion cases from other jurisdictions that implicate section 523(a)(6), particularly cases involving conversions of property subject to a security interest. Although the cases can be analyzed to some extent based on their differing facts, the real difference in the cases is the legal standard being applied to the term "malicious". There are four different legal standards used by Courts in conversion cases that implicate section 523(a)(6). See generally *In re Horldt,* 86 B.R. 823 (Bankr.E.D.Pa.1988).

The first group of cases hold that if a debtor acts intentionally without just cause, then no evidence of a specific intent to injure need be shown to find the debtor acted maliciously. The leading case for this position is *In re Cecchini,* 780 F.2d 1440 (9th Cir.1986). In holding the conversion at issue nondischargeable the court stated:

> When a wrongful act such as conversion, done intentionally, necessarily produces harm and is without just cause or excuse, it is "willful and malicious" even absent proof of a specific intent to injure.

*Id.* at 1443.

Not surprisingly, subsequent cases in the Ninth Circuit almost always find a conversion nondischargeable as long as the debtor read and understood the security agreement. *See, e.g., In re Manser,* 99 B.R. 434 (Bankr. 9th Cir.1989); *In re Sandman,* 68 B.R. 784 (Bankr.D.Mont.1987).

Other courts have also adopted this stringent view regarding nondischargeable debt arising from conversions. See, e.g., *In re Guy,* 101 B.R. 961 (Bankr.N.D.Ind.1988); *In re Iaquinta,* 95 B.R. 576 (N.D.Ill.1989); *In re Cardillo,* 39 B.R. 548 (Bankr.D.Mass. 1984); *In re Thomas,* 36 B.R. 851 (Bankr. W.D.Ky.1984); *In re Nelson,* 35 B.R. 766

(Bankr.N.D.Ill.1983); *In re Scotella,* 18 B.R. 975 (Bankr.N.D.Ill.1982); *In re McCloud,* 7 B.R. 819 (Bankr.M.D.Tenn. 1980).

This position has been criticized as too pro-creditor. As one Court stated:

> [T]o allow a creditor to have a debt owed him found nondischargeable merely upon a showing that the debtor acted intentionally, without just cause or excuse, and without further inquiring into the debtor's intent or knowledge of the wrongful nature of his conduct, at least circumstantially, can cause severe harm to an innocent debtor.

*In re Horldt,* 86 B.R. 823, 827–28 (Bankr.E. D.Pa.1988).

The second group of cases hold that malice cannot be found constructively, but must be evidenced by a specific intent to injure the creditor. See, e.g., *In re Hawley,* 65 B.R. 241 (D.Colo.1986); *In re Lane,* 76 B.R. 1016 (Bankr.E.D.Pa.1987); *In re Gallaudet, III,* 46 B.R. 918 (Bankr.D.Vt. 1985); *Matter of McLaughlin,* 14 B.R. 773 (Bankr.N.D.Ga.1981); *In re Hodges,* 4 B.R. 513 (Bankr.W.D.Va.1980).

Almost all of this latter group of cases find the debt dischargeable. As one court has stated:

> [T]o require a creditor to establish that the debtor disposed of the collateral with the specific intent of injuring the creditor imposes a difficult, if not insurmountable, burden upon the creditors.

*In re Horldt,* 86 B.R. 823, 827 (Bankr.E.D. Pa.1988). See also *In re Guy,* 101 B.R. 961, 982 (Bankr.N.D.Ind.1988) ("[M]ost conversions of property are made to reduce financial strain and reduce expenses rather than to injure the creditor's interest specifically").

A third position—an intermediate position—is a "totality of the circumstances" approach. These courts allow circumstantial evidence to determine the question of malice. Only two courts have adopted this approach. See *In re Horldt,* 86 B.R. 823 (Bankr.E.D.Pa.1988); *Matter of Burdick,* 65 B.R. 105 (Bankr.N.D.Ind.1986). The obvious problem with this approach is that

the standard is so flexible that no guidance can be given for future cases.

The fourth approach, also an intermediate position, was established in *Barclays American/Business Credit, Inc. v. Long* (*In re Long*), 774 F.2d 875 (8th Cir.1985). The Court used the following standard:

> When transfers in breach of security agreements are at issue, we believe nondischargeability turns on whether the conduct is (1) headstrong and knowing ("willful") and (2) targeted at the creditor ("malicious"), at least in the sense that the conduct is certain or almost certain to cause financial harm.

*Id.* at 881.

Using this standard, the Court in *Long* found that the obligation to a creditor there involved—created by a conversion—was a dischargeable debt. The reason was that although Long knew he was breaking the agreement he used the converted funds to help his business with the honest belief he could pay off all creditors in the future.[1]

Several courts, primarily in the Eighth Circuit, have adopted *Long* with the decisions being split in terms of the conclusion as to whether the particular debt arising out of a conversion was held to be dischargeable. Compare *Matter of Wheeler*, 96 B.R. 201 (W.D.Mo.1988) (nondischargeable); *Matter of Robison*, 86 B.R. 182 (Bankr.W.D.Mo.1988) (nondischargeable) with *Matter of Claassen*, 93 B.R. 192 (Bankr.D.Neb.1988) (dischargeable); *In re Hoffman*, 70 B.R. 155 (Bankr.W.D.Ark. 1986) (dischargeable); *In re Vandrovec*, 61 B.R. 191 (Bankr.D.N.D.1986) (dischargeable).

## THE LEGAL STANDARD THIS COURT ADOPTS

Since the First Circuit has not ruled on this issue, this Court chooses to follow the substance of the *Long* approach for deciding whether conversions are nondischargeable under § 523(a)(6). This court relied to a large extent on *Long* in a previous

§ 523(a)(6) case, *In re Tinkham*, 59 B.R. 209 (Bankr.D.N.H.1986). In that case, which was not a conversion case, I held that the disposal of chemical wastes which led to a civil judgment was dischargeable under the facts of the case. In making this ruling, I rephrased the *Long* analysis, to a certain extent, as follows:

> I therefore conclude that to establish a ground for nondischargeability of a debt under § 523(a)(6) of the Bankruptcy Code it must be proven that the debtor engaged in deliberate acts which he knew were certain or substantially certain to result in injury to property. If this is established the debt will remain nondischargeable even though the resulting harm was not the *primary* purpose of the intentional acts.

*Id.* at 217. This rephrasing was intended to eliminate any doubt that it was a *subjective* rather than an *objective* standard that was to be applied—as the *Long* decision itself indicates in its closing passages.

In the present case, the evidence establishes that the debtor engaged in the deliberate act of selling off the collateral without consent. That was clearly a "willful" action. The issue therefore comes down to whether the act was "malicious" under the foregoing interpretation of the statutory provision. A similar situation was presented in *In re Hoffman*, 70 B.R. 155 (Bankr. W.D.Ark.1986), where the debtor sold farm equipment and crops to third parties which were encumbered by liens held by a creditor. The sales were without the creditor's consent and none of the sale proceeds went to the creditor. All of the proceeds were used to continue to operate the farming business. The debtor believed the creditor would eventually be paid. The Court there held the debt was dischargeable, relying primarily on the *Long* decision.

Similarly, in my case, the debtor used the converted proceeds to try to make a business work that he believed would be successful enough to pay off the creditor. In

---

**1.** The Court in *Long* concluded with the following comment: "Debtors who willfully break security agreements are testing the outer bounds of their right to a fresh start, but unless they act with malice by intending or fully expecting to harm the economic interests of the creditor, such a breach of contract does not, in and of itself, preclude a discharge." *Id.* at 882.

18

fact, the debtor made a few payments after the conversion which is a minor factor meriting dischargeability. See *In re Auto Outlet, Inc.*, 71 B.R. 674 (Bankr.D.Utah 1987).

This Court is aware of the seemingly contrary decision recently reached in *In re Padgett*, 105 B.R. 665 (Bankr.E.D.Okla. 1989). In that case an experienced car salesman converted some automobiles subject to a security interest and did not remit the proceeds to the creditor. The debt was held to be nondischargeable under § 523(a)(6) in the face of a claim by the debtor that he sold the collateral to keep the business afloat. However, the distinguishing feature of the *Padgett* case is that the debtor's business was facing a risk of "imminent failure" and was seeking financing from outside established financial markets at the time of the sale. *Id.* at 669. In contrast, the debtor in the present case used the converted proceeds to start a business, and had realistic hopes that it would succeed. In fact, he shortly received substantial financing from traditional sources. But for the unexpected refusal of a bank to honor its floor financing commitment, the debtor would have succeeded. Thus, the *Padgett* decision is not controlling.

## CONCLUSION

The plaintiff has failed to prove by a preponderance of the evidence that the debtor "maliciously" converted the collateral. The debtor knew he was breaching the security agreement, but this fact is not enough under § 523(a)(6). Not every breach of a contractual obligation is a willful and malicious act. *In re Long, supra* 774 F.2d at 882. This debtor had a substantial basis for believing at the time of conversion that he could pay the debt to the creditor in the foreseeable future. The debtor's debt to John Deere Credit Service is discharged.