**In re Gordon Allen WILSON, Debtor.**

**BURLINGTON INDUSTRIES, INC., Plaintiff,**

**v.**

**Gordon Allen WILSON, Defendant.**

**Bankruptcy No. 288–05295–B–7.**
**Adv. No. 288–0467.**

United States Bankruptcy Court, E.D. California.

April 27, 1990.

William W. Nolan, Desmond, Miller & Desmond, Sacramento, Cal., for Plaintiff, Burlington Industries, Inc.

Jerry Guthrie, Guthrie & McCaleb, Sacramento, Cal., for defendant, Gordon Allen Wilson.

## MEMORANDUM OF DECISION

DAVID E. RUSSELL, Bankruptcy Judge.

The foregoing complaint brought by Plaintiff Burlington Industries, Inc. (hereinafter "Burlington") pursuant to sections 523(a)(2)(A) and (a)(4) of Title 11, U.S.C. was heard on January 31, 1990 and submitted following the presentation of closing briefs. Having considered all admissible testimony and evidence of record, the court now renders the following findings of fact and conclusions of law.

Findings of Fact

1) Sometime prior to late 1983 and early 1984, California Floor Covering Contractors, Inc., a California Corporation (hereinafter "CFCC") contracted with Pacific General Group, Inc. (hereinafter "PGG") to provide and install floor covering for an apartment complex in Sacramento County commonly referred to as the "Smoke Tree Apartments".[1]

2) CFCC thereafter subcontracted with Lee's Carpets, a division of Burlington, to obtain and deliver the carpeting needed to fulfill the Smoke Tree contract.[2]

3) CFCC had previously requested that PGG issue only jointly payable checks during the progress of the flooring installation. The purpose for the joint indorsement requirement was to "... make the

---

**1.** The record does not reflect the negotiated contract price of CFCC's services.

**2.** Again, the court has not been apprised of the terms of the contract between CFCC and Lee's Carpeting. Further, it is not clear when Lee's Carpeting began or completed its delivery of the carpeting to CFCC.

supplier (ie., Lee's Carpets) feel confident in the fact that they would get paid from the project." (Testimony of Gordon A. Wilson, R.T. p. 52, 1.6–12). Pursuant to the referenced agreement, PGG ultimately negotiated and delivered three checks jointly payable to CFCC and Lee's Carpets.

4) The first joint check (No. 0394), drawn from PGG's Capitol Bank of Commerce account, was dated January 25, 1984 and issued in the amount of $72,258.31. The check was received, cashed, and deposited into CFCC's general operating account on or around January 27, 1984 by Debtor Gordon Allen Wilson (hereinafter "Debtor") who, at the time, was President and sole shareholder of CFCC. (Direct Testimony of Gordon A. Wilson, filed 9/5/89, at p. 2, ¶ 2; Ex.'s "A" & "B" thereto). Debtor endorsed the check on behalf of Lee's Carpets without the consent or knowledge of the latter.

5) The second joint check (No. 0433), also drawn from PGG's Capitol Bank of Commerce account but in the amount of $102,-140.34, was dated February 9, 1984 and received, cashed, and deposited by Debtor into CFCC's general operating account on or around February 15, 1984 again without the consent or knowledge of Lee's Carpets.

6) A third check in the amount of approximately $8,000.00 was issued by PGG and sent directly to Lee's Carpets and was cashed by the latter without the knowledge or consent of CFCC ostensibly pursuant to a perfected security agreement in CFCC's accounts receivable. (R.T., p. 32, 1.14–25, p. 33, 1.1–25) [3].

7) Mr. George F. Hanrahan, credit manager for Lee's Carpets, attempted to investigate the cause for the delay in receiving payment on the Smoke Tree project in or around May of 1984 (R.T., p. 59, 1.16) but was assured by Debtor that "[CFCC] was having some difficulty getting paid".[4] Mr. Hanrahan did not ultimately discover that the checks had been issued and cashed until sometime in late June or early July of 1984. (R.T., p. 34, 1.10).

8) Burlington ultimately instituted suit against CFCC and Debtor in the Sacramento Superior Court to recover the balance owing to Lee's Carpets under the Smoke Tree contract. On May 13, 1987 Debtor entered into a stipulated judgment (hereinafter "Judgment") wherein he stipulated that he was personally indebted to Burlington in the sum of $115,058.81 and would make certain installment payments to discharge the obligation. (Declaration of Gordon A. Wilson, Ex. "C"). Debtor filed his Chapter 7 petition in bankruptcy on August 15, 1988. No installment payments were ever made on account of the Judgment.

Issues

The question before the court is whether or to what extent the referenced debt of $115,058.81 plus interest is "nondischargeable" pursuant to Title 11, U.S.C. as either a "debt for money, property, services ... to the extent obtained by ... false pretenses, a false representation, or actual fraud" (§ 523(a)(2)(A)), or a debt "for embezzlement, or larceny" pursuant to § 523(a)(4) [5].

Conclusions of Law

The court has jurisdiction over this proceedings pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. §§ 157(b)(1), (b)(2)(I).

i) 11 U.S.C. § 523(a)(2)(A)

The exceptions to discharge relat-

---

**3.** The circumstances surrounding the negotiation of the third check were not extensively explored by counsel. Further, no copies of that check were included in the evidence.

**4.** This, of course, was not the case as CFCC had previously received and cashed the two checks totalling approximately $175,000.00 from PGG and had only to receive the final $8,000.00 payment. Notwithstanding the Debtor's allegations to the contrary, it is apparent to the court that in May of 1984 the Debtor, at the very least, intentionally mislead Mr. Hanrahan into believing that most of the monies from the Smoke Tree Apartments project had not yet been paid when, in fact, substantially all payments had been made to CFCC and were personally cashed and deposited by the Debtor.

**5.** Burlington did not allege the existence of any fiduciary relationship, "ex-maleficio" or otherwise.

**252**

ing to fraud set forth in 11 U.S.C. § 523[6] must be proven by the objecting party by clear and convincing evidence. (*In re Tilbury*, 74 B.R. 73 (9th Cir.B.A.P.1987), *aff'd*, 851 F.2d 361 (9th Cir.1988)). The frauds set forth within § 523(a)(2)(A) were intended to apply *only* to those acts involving moral turpitude or intentional wrong. (3 Collier on Bankruptcy (15th Ed., 1989), ¶ 523.08[4], at p. 523–45 (citations omitted)). Fraud implied in law, absent a finding of bad faith or immorality, will be insufficient to cause the denial of a debtor's discharge as to that debt. (*Id.*).

The court is admittedly disturbed by the conduct of the Debtor in this case. He caused the general contractor to issue checks which required the joint endorsements of both the Debtor and the subcontractor for the avowed purpose of inducing the subcontractor to supply materials on credit. Then, having obtained the confidence of the supplier and the benefit of the bargain (ie., receipt of the goods), the Debtor unilaterally and without the consent or knowledge of the subcontractor endorsed and deposited the checks received by the general contractor thereby converting[7] the portion of the proceeds belonging to the subcontractor.

6. All further references will be to Title 11 of the United States Codes unless otherwise stated.

7. In California the elements of a conversion are (1) that the plaintiff had ownership or right to possession of the property at the time of the conversion; (2) that the defendant converted or disposed of plaintiff's property rights by a wrongful act; and (3) that plaintiff suffered damages as a result thereof. (*In re Littleton*, 106 B.R. 632, 634 (9th Cir.B.A.P.1989), citing *Baldwin v. Marina City Properties, Inc.*, 79 Cal. App.3d 393, 145 Cal.Rptr. 406 (1978)).

8. Although it is true that Burlington devoted a significant percentage of its efforts on proving, albeit successfully, that the Debtor had not obtained the consent of Lee's Carpet to endorse the checks on the latter's behalf, the resulting conversion by itself does not provide the clear and convincing evidence of fraudulent intent required under § 523(a)(2)(A). (*Cf., In re Littleton*, 106 B.R. 632 (9th Cir.B.A.P.1989)). The court would have been interested in knowing, for example, whether the Debtor had a reasonable expectation of repaying Lee's Carpets from other work in progress or from any other

As suspect as the Debtor's conduct appears, however, the court is dismayed that Burlington has substantially failed to ferret out and expose the fraud. Specifically, Burlington has neglected to provide the court with any significant evidence (direct or circumstantial) regarding the Debtor's actual state of mind at the time the monies were so converted.[8] Thus, although highly suspicious of the Debtor's motives in converting the funds which belonged to Lee's Carpet, the court lacks sufficient evidence upon which to base a finding of fraud in fact. Absent significant supplemental evidence that the indorsement by Debtor on behalf of Lee's Carpets of the two PGG checks was committed with deceitful intent, the court will not interfere with the Debtor's discharge.[9]

### ii) 11 U.S.C. § 523(a)(4)

Likewise, absent the requisite showing of specific intent to defraud or permanently deprive Lee's Carpet of its share of the PGG check proceeds at the time of the conversion, the court is unwilling to find that the Debtor's conduct rose to the level of either embezzlement or larceny for the purposes of rendering the debt nondischargeable pursuant to 11 U.S.C. § 523(a)(4).[10] As was noted above, no sat-

source at the time he absconded with the proceeds from the Smoke Tree project. As the record stands, however, the only testimony on the subject was by the Debtor wherein he testified on direct examination that at the time the checks were cashed CFCC was "starting to fall behind on some of [its] bills" (R.T., p. 59, 1.6–7) and that the money was used to "sustain [the] business". (R.T., p. 59, 1.10). Such conduct does not necessarily manifest fraudulent, deceitful, or immoral intent. Rather, it could as easily be argued that CFCC simply intended to "buy some time" so that it could collect delinquent or anticipated receivables and pay all creditors.

9. Because Debtor's misrepresentation to Mr. Hanrahan regarding the receipt (or lack thereof) of payment from PGG was made *after* the monies had been converted, no money could have been "obtained" as a result thereof and, consequently, the exception under § 523(a)(2)(A) will not apply. (3 Collier on Bankruptcy (15th Ed., 1989), ¶ 523.08, at p. 523–49).

10. Embezzlement is the fraudulent appropriation of property by a person to whom such

isfactory showing of intent at the time of the conversion was demonstrated by Burlington. Consequently, the debt will not survive the Debtor's discharge.[11]

## DISPOSITION

For the foregoing reasons, the court finds the debt owed by Debtor to Burlington as manifested by the aforementioned stipulated judgment to be dischargeable. A separate judgment consistent with the above memorandum shall issue forthwith.

property has been entrusted, or into whose hands it has lawfully come, and requires fraud in fact involving moral turpitude or intentional wrong rather than implied or constructive fraud. (*In re Black*, 787 F.2d 503 (10th Cir. 1986); *Delgado–Chavez v. I.N.S.*, 765 F.2d 868, 869 (9th Cir.1985) (Embezzlement is a crime which involves the intent to defraud and is a crime of moral turpitude)). Common law larceny, in turn, requires a taking of property from the possession of another without his consent and with intent to permanently deprive him of possession. (*United States v. Sellers*, 670 F.2d 853, 854 (9th Cir.1982)). Pursuant to California law, embezzlement and larceny are subsumed within the general definition of "theft" (California Penal Code §§ 490(a), 484) which, likewise, requires a finding of felonious or fraudulent intent. (*See, e.g., People v. Jaso*, 84 Cal.Rptr. 567, 4 Cal.App.3d 767 (1970)) (Theft requires a specific intent to permanently deprive owner of his property).

11. Whether such a showing would suffice in the context of 11 U.S.C. § 523(a)(6) complaint is not an issue properly before the court as that cause of action was neither alleged in the complaint nor argued at trial.