In re David H. PREVOST, d/b/a
Prevost Forest Products.

STILES BROOK FOREST,
INC., Plaintiff,

v.

David H. PREVOST, d/b/a Prevost
Forest Products, Defendant.

Bankruptcy No. 89–10981.
Adv. No. 90–1015.

United States Bankruptcy Court,
D. New Hampshire.

Jan. 23, 1991.

Leonard G. Deming II, Nashua, N.H., for debtor.

Timothy P. Smith, Manchester, N.H., for plaintiff.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This opinion concerns a complaint for nondischargeability of a debt of $11,906.02 under § 523(a)(6). A trial was held on September 10, 1990 in which I found that the debtor acted willfully and maliciously, but I deferred ruling until today on whether there was an injury to "property of another" within the meaning of the statute.

### Facts

1. Plaintiff owned a forest. Plaintiff entered into a written contract with the debtor to log part of the forest. After cutting logs and bringing them to the sawmill where defendant was paid for the logs, defendant was supposed to remit an established fee to plaintiff along with the mill receipt. For tax purposes, the agreement stated the logs taken and milled were the plaintiff's property until the plaintiff was paid. The contract specifically provided as follows:

ARTICLE II
A. The PURCHASER agrees to pay the SELLER for said standing timber, hereinafter called stumpage, at the following rates based on the International ¼ Inch Log Rule for Sawlogs, and for Cordwood with a Cord defined as 4′ × 4′ × 8′.

Note: All sawlog stumpage prices, unless otherwise indicated, refer to all grades for a particular species. Mill slips _must_ agree with payment statements.

SAWLOGS                                  PULPWOOD

| | | | | | |
|---|---|---|---|---|---|
| White pine | $70/MBF | Amer.Beech | $ 20/MBF | Firewood | $5./CD |
| Spruce | 52 | White birch | 60 | Hdwd Pulp | 5./CD |
| Fir | 52 | Yellow birch | 70 | Sfwd Pulp | 5./CD |
| Hemlock | 25 | Black cherry | 170 | Pine Pulp | 1./CD |
| Sugar maple | 70 | White ash | 170 | | |
| Pallet/Tie | 20 | Red oak | 250 | | |
| Red Maple | 20 | | | | |

Purchaser will cut, yard, and buck specialty products for $55/MBF.

B. The timber shall be measured by using the Mill Tally. All logs and cordwood shall remain the property of the SELLER until the applicable stumpage is paid in full.

C. The PURCHASER agrees that all stumpage payments are to be made weekly to the SELLER for all timber removed the prior week. Such payments shall be accompanied by the corresponding Mill Tally Scale Slips with the PURCHASER'S statement of the species, volume stumpage rate and dollars represented by said payment.

D. All checks for stumpage payments are to be made out to LandVest, Inc., and are to be sent to same at: 82 Washington Street, Keene, N.H. 03431.

---

2. During the course of the contract a dispute developed about how much gravel the plaintiff would place on the road leading out of the forest during the rainy fall months. Defendant was not satisfied with the amount of gravel actually put on the road and claimed it impeded his work progress. (However, insufficient evidence was introduced to prove any damages.) When the debtor resumed limited logging operations in the winter he did not pay the plaintiff any of the proceeds due from logs sold at the sawmill (or send the mill receipt). I believe he did this due to this dispute about the gravel on the road.

### Legal Discussion

Under my holding in _In re McLaughlin,_ 109 B.R. 14 (Bankr.D.N.H.1989), I found at the hearing there was a willful and malicious act when the debtor kept the funds received at the mill in the winter which were due to the plaintiff. As I stated in that case, to find maliciousness:

> ... it must be proven that the debtor engaged in deliberate acts which he knew were certain or substantially certain to result in injury to property.

_Id._ at 17 (quoting _In re Tinkham,_ 59 B.R. 209, 217 (Bankr.D.N.H.1986).

In _In re McLaughlin, supra,_ I went on to hold that the debtor's conversion of property subject to a security interest was a dischargeable debt, but only because he had a "substantial basis for believing" he could pay the creditor in the near future. _Id._ at 18. That is not the case here.

The only question remaining is whether the injury to the plaintiff in not receiving the funds is to "property of another." A recent case providing some guidance is _In re Waning,_ 120 B.R. 607 (Bankr.D.Me. 1990). In this case, a salesman allegedly converted inventory by not paying its supplier for it after making sales and being invoiced where the salesman agreed to pay his supplier a certain fee for each item of inventory upon retail sale. The court found there was no "true consignment" that kept title in the supplier, nor did the supplier keep a security interest in the inventory. Therefore, there was no injury to "property of another."

_Waning, supra_ is similar to my case because there was no true consignment

agreement,[1] nor did the creditor have any security interest in the logs or cash proceeds from sale to the mill. What the *Waning* court did not discuss, but was obvious from the facts of that case, was that there was no identifiable fund of cash that belonged to the creditor for inventory sold. The salesman-debtor was billed for inventory sold after he sold it, and his payment was irregular.

The creditor in my case has cited cases holding a debt nondischargeable where there was an identifiable fund of cash that belonged to the creditors. *In re St. Paul Fire and Marine Ins. Co. v. Vaughn*, 779 F.2d 1003 (4th Cir.1985), for example, the debtor had agreed with the creditor to place the proceeds of a specific government check into his attorneys' trust account and then pay the creditor part of that fund, but instead placed the check in another account and converted the proceeds. Likewise, in *In re Valentine*, 104 B.R. 67 (Bankr.S.D. Ind.1988), the debtor had agreed to pay the creditor part of the money out of a check for insurance proceeds and the check named the creditor as a joint payee, but the debtor instead converted the check. Finally, in the case of *In re Piscioneri*, 108 B.R. 595 (Bankr.N.D.Ohio 1989), the management company-debtor of a shopping center was supposed to apply rental payments toward mortgage installments, taxes and other obligations of the creditor-owner, but instead converted the funds.

What makes these cases different from the *Waning* case was there was an identifiable fund of cash that belonged to the creditor. This fact distinguishes them from the ordinary breach of contract case which is dischargeable.

Applying this distinction to my case, the decisive contractual provision is Article IIC. That provision provides that the debtor is to make payments to the plaintiff each week for logs removed the prior week. The clear implication of the provision, as well as the practice of the parties, is that the plaintiff would be paid each week out of the fund of cash that the debtor received

the prior week from the mill, with the amount determined by that week's mill receipt. This case is more similar to those cases cited by the plaintiff where the debtor comes into possession of a joint check than the *Waning* case where there was a running account and payments made irregularly. There is an identifiable fund of cash belonging to the creditor.

### Conclusion

The debtor acted willfully and maliciously, and injured the property of another, within the meaning of section 523(a)(6), by not remitting the established fee for logs cut and milled. The debt of $11,906.02 is thus nondischargeable.

---

**1.** Although the contract stated the creditor owned the logs, this was for tax purposes and the economic substance of the transaction was not a true consignment relationship.