**In re Steven Paul RIGSBY, Sr., a/k/a Automotive Tools & Equipment, Debtor.**

**John CARLSON, d/b/a Chassis Liner, Plaintiff,**

**v.**

**Steven Paul RIGSBY, Sr., Defendant.**

**Bankruptcy No. 90–3631–BKC–3P7. Adv. No. 90–307.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 29, 1993.

Daniel J. Glary, Jacksonville, FL, for plaintiff.

Albert H. Mickler, Jacksonville, FL, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding came before the Court upon complaint of John Carlson seeking exception to discharge pursuant to 11 U.S.C. § 523(a)(2) and (4). A trial was held on February 12, and September 24, 1992, at which time plaintiff abandoned his claim under § 523(a)(2), leaving for consideration only the embezzlement count of the complaint. Upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### Findings of Fact

Plaintiff manufactured automobile frame straightening equipment as a sole proprietor under the name of Chassis Line in Lucan, Minnesota.

In May of 1987, the parties entered into a verbal agreement allowing defendant to act as an independent distributor for such equipment in northeast Florida. Under the agreement, plaintiff would quote a wholesale price, and defendant would secure a buyer for the retail price. The goods were delivered directly to the purchaser and payment was made to plaintiff. Plaintiff then paid defendant his commission.

In early 1988, the agreement was altered. The buyer paid defendant directly for the equipment and delivery was made to defendant's place of business. After collecting payment, defendant remitted the invoice cost of each piece of equipment to plaintiff.

The evidence indicates that the intended sale was not always consummated, but de-

fendant would continue to market the particular piece of equipment until a suitable buyer was obtained. Plaintiff was not concerned with the identity of the ultimate purchaser and did not expect payment until defendant was paid.

Plaintiff kept a set of ledger cards recording his transactions with defendant. They indicate that plaintiff kept a running balance in the form of an open account under defendant's name. The account contains credits for payments made by defendant and debits for shipments sent by plaintiff.

Defendant had no duty to segregate either the machinery or sale proceeds.

Plaintiff claims a security interest in the equipment sold by virtue of a UCC–1 and a signed security agreement between the parties. The Court has reviewed each of the documents, as well as handwriting samples of the defendant, and concludes that the signature on the two documents is not the signature of the defendant. Additionally, the Court notes that plaintiff has taken no action to enforce its security interest in any of the pieces of equipment at issue in this proceeding.

Essentially plaintiff claims that defendant sold six separate pieces of equipment for which payment was made to defendant, but the invoice price was not remitted to plaintiff. Plaintiff asserts that the sales were not made to the buyers defendant had represented were to purchase the equipment and that defendant refused to assist plaintiff in locating the equipment. The machinery had a total value of $69,390.00.

### Conclusions of Law

Although the bankruptcy process is intended to provide the debtor with a fresh start, the new beginning is not without limitations. Section 523 outlines a number of exceptions to discharge that are designed to prevent the debtor from avoiding the consequences of pre-petition wrongful conduct. A creditor seeking to except a debt from discharge bears the burden of proof as to each element through a preponderance of the evidence. *Grogan v. Gar-*

*ner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Plaintiff maintains that defendant's actions have amounted to embezzlement and, therefore, the debt is non-dischargeable under § 523(a)(4). Section 523(a)(4) provides in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny....

This Court has defined embezzlement in the context of a dischargeability proceeding as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *In re Kelley,* 84 B.R. 225, 231 (Bankr.M.D.Fla.1988) (quoting *Moore v. United States,* 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895)). In order to prevail on an embezzlement claim, plaintiff must demonstrate that the defendant appropriated funds or property for his own benefit and that he did so with fraudulent intent or deceit. *In re Michel,* 74 B.R. 88, 90 (N.D.Ohio 1986); *In re James,* 42 B.R. 265, 267 (Bankr. W.D.Ky.1984). Proof of a fiduciary relationship is not necessary. *In re Kelley,* 84 B.R. at 231.

In the proceeding at bar, plaintiff failed to meet its burden on the fraudulent intent or deceit element. The only conclusion that can be reached by this Court with any degree of certainty is that neither party kept adequate records. The evidence presented was insufficient to demonstrate that defendant intended to deceive plaintiff. Rather, defendant offers his own records indicating that payments have been made for the equipment. Plaintiff's records are not the original documents, having been "cleaned up," and are not sufficient to sustain plaintiff's burden.

In addition to the intent element, plaintiff has a further barrier to recovery. Embezzlement arises only where a party has lawfully come into possession of property which belongs to another and then

knowingly and willfully misapplies or converts the property. *In re Storms,* 28 B.R. 761, 765 (Bankr.E.D.N.C.1983). If the actions of the parties are more in the nature of a debtor-creditor relationship, property that comes to the debtor belongs to him and cannot be embezzled. *Id.*

The *Storms* case is factually similar to this adversary proceeding. In that case Storms was an agent of Great American for the sale of crop-hail insurance and was responsible for finding his own customers. Great American kept no account between it and the policyholders. Instead, the company sent a monthly statement to Storms, outlining the premiums owed. Storms collected the premiums, retained a commission, and paid the balance to Great American. He was personally liable to Great American for all premiums due and Great American was unconcerned with the details of premium collection. *Id.* at 763.

Storms collected premiums in the spring of 1981, and used the proceeds to operate a real estate and construction business. In November, 1981, when the premiums were due to Great American, Storms had insufficient funds to make the payments. He and his wife subsequently filed a chapter 7 petition. *Id.* at 763–64.

The North Carolina court concluded that the parties were situated as debtor and creditor, thus no embezzlement was committed. Consequently, the court refused to except the debt from debtor's discharge. *Id.* at 765–66.

■ In the instant proceeding, the weight of the evidence indicates that the parties were also in a debtor-creditor relationship. Plaintiff kept a running balance under defendant's name, indicating that defendant was purchasing equipment on an open account basis. In addition, plaintiff looked to defendant for payment and had no contact with the purchasers. Accordingly, no embezzlement has been committed, and a separate Judgment finding in favor of defendant and against plaintiff will be entered.